UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **WAKEMED,**<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>**WILLIS TOWERS WATSON SOUTHEAST, INC.,**<br><br>　　　　　　　Defendant. | Case No. 3:23-CV-210<br><br>**COMPLAINT**<br>**(Jury Demand)** |

Plaintiff WakeMed, for its Complaint against Defendant Willis Towers Watson Southeast, Inc. ("WTW"), alleges as follows:

## THE PARTIES

1. WakeMed is a North Carolina non-profit corporation with its principal place of business in Raleigh, North Carolina. WakeMed is the leading provider of health services in Wake County, North Carolina.

2. WTW is a Tennessee corporation with its principal place of business in Nashville, Tennessee. At times relevant to this Complaint, WTW was WakeMed's insurance broker and advisor. This action arises from WTW's negligence and breaches of its contract with WakeMed.

## JURISDICTION AND VENUE

3. This Court has specific and general personal jurisdiction over WTW because WakeMed's claims arise from WTW's purposeful activities in North Carolina, and WTW continuously and systematically engages in the business of insurance brokerage in North Carolina.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs,

and the parties are citizens of different states. For purposes of federal subject matter jurisdiction, WakeMed is a citizen of North Carolina and WTW is a citizen of Tennessee.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because WTW resides in this District, and a substantial part of the events, acts and omissions giving rise to WakeMed's claims occurred in this District.

## SUMMARY OF THE CASE

6. Beginning on September 9, 2022, three putative class action lawsuits were brought against WakeMed, all arising from WakeMed's alleged unauthorized disclosures of patients' protected information through its use of the Meta Pixel tracking tool beginning in March 2018 (collectively, the "Claim").[1] The plaintiffs claim that WakeMed's alleged disclosures violated various federal and state laws.

7. WakeMed denies that its use of Meta Pixel violated any statutory, regulatory or common law duty or prohibition, and is vigorously defending itself against the Claim. Nothing in this Complaint is intended as an admission or acknowledgement of any fact alleged in the underlying litigation. WakeMed reserves all rights and defenses related to the Claim, and all rights under any and all insurance policies that may provide coverage for the Claim, including, without limitation, the Cyber Policy as defined in the following paragraph.

8. On or about October 1, 2020, WTW procured, and WakeMed purchased, Netguard Plus Cyber Liability Insurance Policy No. H20NPP70392-00 (the "Cyber Policy") from Tokio Marine and Houston Casualty Company (together, "Tokio Marine"). The Cyber

---

[1] Two lawsuits were filed in federal court: *Naugle, et al. v. Meta Platforms, Inc., et al.*, U.S. District Court for the Middle District of North Carolina, Case No. 1:2022cv00727; and *Matthiae, et al. v. WakeMed Health and Hospitals*, U.S. District Court for the Eastern District of North Carolina, Case No. 5:2022cv00433. *Weddle, et al. v. WakeMed Health and Hospitals,* Wake County, North Carolina Superior Court, Case No. 22-CVS-13860 was filed in state court. Subsequently, plaintiff Matthiae dismissed her action, and the *Weddle* suit was amended to add Ms. Matthiae as a named plaintiff.

Policy, which was a renewal, was a claims-made policy with the initial reporting period of October 1, 2020 to November 30, 2021, including the Cyber Policy's automatic 60-day extended reporting period. WakeMed paid Tokio Marine $113,000 in exchange for an additional 12-month extended reporting period.

9. WakeMed notified WTW of circumstances giving rise to the Claim in June 2022, and it was WTW's responsibility to investigate and timely report the matter to all insurers whose policies potentially provided coverage. WTW failed to report the matter to Tokio Marine under the Cyber Policy. Beginning in June 2022, and continuing when the first lawsuit was filed against WakeMed in September 2022, WTW had misled WakeMed to believe that it no longer had coverage under the Cyber Policy. By mid-October 2022, however, WakeMed's new insurance broker determined that the Cyber Policy remained in effect through at least October 1, 2022, and WakeMed reported the Claim to Tokio Marine on October 21, 2022. On October 25, 2022, Tokio Marine denied coverage on the ground that the Claim was not reported to Tokio Marine before the extended reporting period allegedly expired on October 1, 2022. But for WTW's contract breaches and negligence, the Claim would have been reported to Tokio Marine before October 1, 2022, and Tokio Marine would have indemnified WakeMed for defense costs and damages related to the Claim.

## FACTS

10. WTW served for several years as WakeMed's broker and trusted insurance advisor under a series of substantially similar brokerage contracts. The last of these contracts was for the one-year period of October 1, 2021 through September 30, 2022 (the "WTW Contract"). (The WTW Contract is attached as Exhibit A.)

11. The WTW Contract consisted of a Statement of Work (the "SOW") and associated Scope of Services (the "SOS"), and Brokerage Terms, Conditions & Disclosures (the

"Terms").  In exchange for a $271,000 fee, WTW agreed to provide the services described in the SOW/SOS, subject to the Terms.

12. Under the WTW Contract, WTW agreed to perform the broad range of services of a full-service broker.  Among the "General Services" WTA agreed to provide was "ongoing coverage analysis and critique of policy language."  (Exhibit A at 4.)

13. "Claim Reporting" was a specific category of services WTW agreed to perform. (Exhibit A at 5.)  WTW pledged to "report" on WakeMed's behalf all claims against each policy WTW procured, specifically including the Cyber Policy.  (Exhibit A at 5.)  WTW's Claim Reporting obligations included "[c]onducting coverage reviews" for all potentially covered claims and losses of which WakeMed informed WTW, and timely reporting to insurers of all potentially covered claims and losses under all policies procured by WTW, specifically including the Cyber Policy.  (Exhibit A at 5.)

14. WTW further agreed under the WTW Contract to serve as WakeMed's "claim advocate."  In this capacity, WTW agreed to "review and assist" WakeMed with "coverage issues" generally, specifically including "[a]dvising" WakeMed on "policy coverage", "[a]ddressing issues concerning applicable coverage" under each policy, and "assisting" WakeMed in determining if any potentially-covered incident "should be reported" to the applicable insurers.  (Exhibit A at 5.)

15. The WTW Contract's Brokerage Terms included WTW's commitment to provide WakeMed "with accurate and timely facts, information and direction" and to "inform [WakeMed] of the reporting requirements for claims, including where claims should be reported and the method of reporting to be used, if applicable."  (Exhibit A at 12.)

16. In addition to its contractual obligations described in paragraphs 12 through 15 above, WTW agreed to perform its services in accordance with "all laws."  (Exhibit A at 8.)

This obligation included the duties of an insurance broker under North Carolina law, which governed WTW's performance. (Exhibit A at 11.) One such duty was WTW's obligation to timely and correctly advise WakeMed about the nature and extent of its coverages.

17. On or about October 1, 2020, WTW procured, and WakeMed purchased, the Tokio Marine Cyber Policy. The initial period of the Cyber Policy was October 1, 2020 to October 1, 2021, with an automatic 60-day extended reporting period through November 30, 2021.

18. By mid-2021, WakeMed had decided that it would not renew the Cyber Policy. WakeMed so informed its primary contact at WTW, Timothy Steadman, a WTW Vice President and Client Advocate.

19. On October 1, 2021, Mr. Steadman sent an email to WakeMed regarding "extended reporting for cyber liability policy." Knowing that WakeMed would not renew the Cyber Policy, Mr. Steadman explained that WakeMed could purchase an additional extended reporting period of 12, 24 or 36 months. Mr. Steadman included a spreadsheet showing the cost of each option, and recommended that WakeMed purchase an additional extended reporting period. Mr. Steadman assured WakeMed several times, including in his October 1, 2021 email, that an additional extended reporting period would ensure that WakeMed would continue to have "coverage" under the Cyber Policy through the end of the additional extended reporting period.

20. On October 19, 2021, WakeMed informed Mr. Steadman that it had decided to purchase an additional 12-month extended reporting period, and two days later Mr. Steadman confirmed that WTW had procured the additional 12-month extended reporting period as WakeMed had requested. WakeMed paid $113,000 for the additional 12-month extended reporting period, during which WakeMed would continue to have coverage under the Cyber Policy. Although Tokio Marine issued an endorsement for the additional 12-month extended

reporting period, and sent the endorsement to WTW, WakeMed has no record of WTW forwarding the endorsement to WakeMed. It was not until January 19, 2023 that WTW provided the endorsement in response to WakeMed's direct request.

21. WakeMed's complex insurance program consisted of more than 30 policies procured by WTW, involving various lines of coverage for several entities, operations and facilities. An essential responsibility of WTW, therefore, was to keep WakeMed accurately apprised of its many coverages. WTW sought to fulfill this responsibility in part by creating periodic Schedules of Insurance. Each Schedule of Insurance was intended to provide WakeMed a comprehensive listing of its insurance coverages as of the date of the Schedule. WakeMed relied on the Schedules of Insurance for various planning and operational purposes, including its evaluation of possible coverage for, and need to report, third-party claims and other losses arising in the course of WakeMed's business. As discussed below, the last Schedule of Insurance that WTW provided to WakeMed purported to state a comprehensive list of WakeMed's coverages as of June 29, 2022.

22. WTW was aware of circumstances giving rise to the Claim long before the additional 12-month extended reporting period under the Cyber Policy expired. On or about June 24, 2022, Mr. Steadman discussed the Meta Pixel incident (the basis of the Claim) with Valerie Barlow, WakeMed's Senior Vice President responsible for insurance. Mr. Steadman asked no questions about the timing or nature of the Meta Pixel matter, and said nothing of WakeMed's continuing coverage rights under the Cyber Policy, much less report the matter to Tokio Marine or advise WakeMed to do so.

23. On June 27, 2022, Jenna Simon, WakeMed's outside insurance counsel relative to transitioning WakeMed's cyber liability coverage to a captive policy, sent Mr. Steadman and others an email that referenced the "cyber incident" or "cyber breach" on which the Claim is

based. Ms. Simon's email addressed insurance-related issues relative to the matter. The email included the erroneous statement that WakeMed was self-insured for cyber risks as of June 27, 2022. Mr. Steadman read Ms. Simon's email on June 27, 2022, evidenced by the fact that on the same date Mr. Steadman forwarded the email to Ms. Barlow. Mr. Steadman did not correct or otherwise comment on Ms. Simon's erroneous statement that WakeMed was self-insured for cyber risks in June 2022, said nothing of WakeMed's ongoing coverage rights under the Tokio Marine Cyber Policy, did not initiate any follow-up communications with WakeMed regarding the nature or timing of the cyber incident or WakeMed's cyber insurance coverage, and did not report the matter to Tokio Marine, or advise WakeMed to do so, to preserve WakeMed's ongoing coverage rights under the Cyber Policy.

24. On June 29, 2022, Heather Miller, a relatively new WakeMed Associate General Counsel who had not worked with Mr. Steadman previously, sent Mr. Steadman an email concerning WakeMed's cyber insurance coverage rights. Ms. Miller provided a previous description of WakeMed's cyber coverage as of October 5, 2018, and asked Mr. Steadman to inform her of WakeMed's "current coverage" for cyber liability. On July 5, 2022, Mr. Steadman sent a reply email to Ms. Miller, copying Ms. Barlow. Mr. Steadman's reply stated that WakeMed had decided to place cyber coverage into a captive policy. Despite being asked directly for a statement of WakeMed's "current" cyber coverage, Mr. Steadman's reply said nothing of WakeMed's continuing coverage rights under the Tokio Marine Cyber Policy, implying to WakeMed that its rights under the Cyber Policy had expired.

25. On June 2, 2022, in the context of discussing the status of WakeMed's cyber coverage, Mr. Steadman sent Ms. Simon and others an email and schematic of WakeMed's current insurance coverages. The schematic omitted the continuing coverage rights under the Tokio Marine Cyber Policy. Mr. Steadman's email that accompanied the schematic further

7

implied a lack of cyber coverage rights, because Mr. Steadman reported that WakeMed's property insurer, Zurich, had confirmed that its commercial property policy did not currently cover cyber events.

26. The last Schedule of Insurance that WTW prepared for WakeMed purported to state a comprehensive list of WakeMed's coverages as of June 29, 2022. However, WTW failed to include the Tokio Marine Cyber Policy, which, as Mr. Steadman had represented previously, including in his October 1, 2021 email, continued to provide "coverage" to WakeMed until at least October 1, 2022. This had the effect of incorrectly advising WakeMed about the nature and extent of its coverages, and again indicated to WakeMed that its rights under the Tokio Marine Cyber Policy had expired. As the parties intended, WakeMed relied on the Schedule of Insurance as a complete and accurate statement of its insurance coverage rights as of June 29, 2022.

27. The first lawsuit related to the Claim (*Naugle*) was filed on September 1, 2022. WakeMed was served with the Summons and Complaint on September 9, 2022. Due to WTW's errors and omissions described in paragraphs 9, 20 and 22 through 26 above, WTW had caused WakeMed to mistakenly believe at that time that it did not have coverage rights under the Tokio Marine Cyber Policy. Therefore, WakeMed did not report the Claim to Tokio Marine, and did not ask WTW to do so.

28. For reasons that are not material to this lawsuit, WakeMed did not renew the WTW Contract, which expired on September 30, 2022. WakeMed's new broker quickly discerned in October 2022 that the additional 12-month extended reporting period under the Tokio Marine Cyber Policy was in effect when the Claim was made, and advised that the Claim be reported to Tokio Marine. WakeMed reported the Claim to Tokio Marine on October 21, 2022. Tokio Marine denied coverage on October 25, 2022. Tokio Marine did not dispute that

the factual allegations underlying the Claim fall within the Cyber Policy's coverage. Instead, Tokio Marine denied coverage on the ground that the Claim was not reported to Tokio Marine by October 1, 2022, the date Tokio Marine contends the Cyber Policy's additional 12-month extended reporting period expired. But for the conduct of WTW described above, the Claim would have been reported to Tokio Marine by October 1, 2022, and Tokio Marine would have indemnified WakeMed in accordance with the Cyber Policy.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

29. WakeMed incorporates the allegations of paragraphs 1 through 28 above.

30. The WTW Contract was entered into in North Carolina, and is a valid and enforceable contract under North Carolina law.

31. WakeMed has fulfilled all of its duties under the WTW Contract, and all conditions of the WTW Contract have been satisfied relative to WakeMed bringing this breach of contract claim against WTW.

32. By the acts and omissions described in paragraphs 9, 20 and 22 through 26 above, WTW materially breached its obligations under the WTW Contract, specifically including the obligations described in paragraphs 12 through 16 above.

33. As a direct and proximate result of WTW's material breaches of its obligations under the WTW Contract, Tokio Marine denied coverage for the Claim under the Cyber Policy on the ground that the Claim was not reported to Tokio Marine before the Cyber Policy's additional 12-month extended reporting period allegedly expired, directly causing WakeMed to lose indemnity protections for defense costs and damages it would have had but for WTW's breaches of the WTW Contract. Tokio Marine would have indemnified WakeMed against the Claim, including defense costs and damages, had WTW not breached the WTW Contract. WakeMed is entitled to a Judgment requiring WTW to defend and indemnify WakeMed against

the Claim, subject to the Cyber Policy's retention and coverage limits, and an award of money damages in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
(Common Law Negligence)

34. WakeMed incorporates the allegations of paragraphs 1 through 33 above.

35. In addition to WTW's contractual obligations set forth in the WTW Contract, WTW agreed and was otherwise obligated to perform its services for WakeMed in compliance with all laws, including North Carolina common law. (Exhibit A at 8, 11.)

36. Under North Carolina law, WTW owed a duty to WakeMed to perform its services with reasonable diligence and care as a full-service insurance broker, including, without limitation, WTW's duty to timely and correctly advise WakeMed about the nature and extent of its insurance coverage rights. WTW also had the duty to exercise reasonable diligence and care to report and/or advise WakeMed to report to WakeMed's insurers all matters that would potentially qualify for coverage under their respective policies.

37. WTW breached its duty to exercise reasonable diligence and care in the performance of its services for WakeMed based on the acts and omissions described in paragraphs 9, 20 and 22 through 26 above.

38. As a direct and proximate result of WTW's breach of its duty to exercise reasonable diligence and care in the performance of its services, Tokio Marine denied coverage for the Claim on the ground that the Claim was not reported to Tokio Marine before the Cyber Policy's additional 12-month extended reporting period allegedly expired, directly causing WakeMed to lose indemnity protections for defense costs and damages it would have had but for WTW's negligence. Tokio Marine would have indemnified WakeMed against the Claim, including defense costs and damages, had WTW exercised reasonable diligence and care in performing its services. WakeMed is entitled to a Judgment requiring WTW to defend and

indemnify WakeMed against the Claim, subject to the Cyber Policy's retention and coverage limits, and an award of money damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
**(Declaratory Judgment)**

39. WakeMed incorporates by reference the allegations of paragraphs 1 through 38 above.

40. An actual controversy presently exists between WakeMed and WTW concerning their respective rights and obligations under the WTW Contract, as well as WTW's obligation to defend and indemnify WakeMed against the Claim, subject to the Cyber Policy's retention and limits.

41. Pursuant to 28 U.S.C. § 2201(a), the Court may enter a judgment declaring the parties' respective rights and obligations under the WTW Contract, including WTW's obligation to defend and indemnify WakeMed against the Claim.

42. The Court's entry of such a declaratory judgment would clarify and settle the legal rights and relations at issue herein, and afford relief from the uncertainty, insecurity and controversy giving rise to this action.

43. Pursuant to 28 U.S.C. § 2202, the Court may grant further necessary or proper relief related to a declaratory judgment entered pursuant to 28 U.S.C. § 2201(a).

44. WakeMed respectfully requests that the Court enter a Declaratory Judgment that WTW is obligated to defend and indemnify WakeMed against the Claim, subject to the Cyber Policy's retention and limits.

### JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure, WakeMed demands a trial by jury of all issues so triable.

WHEREFORE, WakeMed respectfully asks that the Court:

1. On the First Claim for Relief, enter Judgment requiring WTW to defend and indemnify WakeMed against the Claim, subject to the Cyber Policy's retention and limits, and awarding WakeMed any recoverable money damages in an amount to be determined at trial;

2. On the Second Claim for Relief, enter Judgment requiring WTW to defend and indemnify WakeMed against the Claim, subject to the Cyber Policy's retention and limits, and awarding WakeMed any recoverable money damages in an amount to be determined at trial;

3. On the Third Claim for Relief, enter a Declaratory Judgment that WTW is obligated under the WTW Contract and defend and indemnify WakeMed against the Claim, subject to the Cyber Policy's retention and limits; and

4. Award WakeMed all further equitable and legal relief the Court deems just.

This 13th day of April, 2023.

/s/R. Steven DeGeorge
R. Steven DeGeorge
N.C. Bar No. 20723
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
(704) 377-8380
sdegeorge@rbh.com

*Attorneys for Plaintiff WakeMed*