UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-210-MOC-SCR

| WAKEMED, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WILLIS TOWERS WATSON SOUTHEAST, INC. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. No. 9). Defendant filed a memorandum in support of this motion. (Doc. No. 10). Plaintiff filed a response in opposition to the motion and Defendant has filed a reply. (Doc. Nos. 14, 16). For the following reasons, Defendant's Motion to Dismiss is **GRANTED**.

I. BACKGROUND

a. **Plaintiff Hires Defendant as an Insurance Broker and Advisor**

This case stems from an insurance coverage dispute. Plaintiff WakeMed is a hospital system providing health services in Wake County. (Doc. No. 1, Compl. ¶ 1). Plaintiff hired Defendant Willis Towers Watson Southeast, Inc., an insurance broker and advisor, to assist Plaintiff in purchasing insurance policies and reporting insurance claims.

As part of the contract between Plaintiff and Defendant (the "Contract"), Defendant agreed to perform a broad range of services. These services included providing "coverage

1

advising" and "claim reporting" services to Plaintiff "in a professional manner with reasonable skill and care." (Id. ¶¶ 12–16; Id. at 9). Specifically, Defendant was contractually required–at the time a claim was reported to Defendant–to report the claim to appropriate insurance carriers and conduct insurance coverage reviews. However, the Contract also provided that Defendant would "not be responsible for any consequences" arising from Plaintiff's delay in sharing information with Defendant. (Id. at 8).

### b. Defendant Procures and Plaintiff Purchases Insurance "Cyber Policy"

As Plaintiff's insurance broker and advisor, Defendant helped Plaintiff purchase a cyber liability policy ("Cyber Policy") from insurance provider Tokio Marine/Houston Casualty Company ("Tokio Marine") on or about October 1, 2020. (Doc. No. 1 at ¶ 17). The initial period of the Cyber Policy was October 1, 2020 to October 1, 2021, with an automatic 60-day extended reporting period through November 30, 2021. (Id.). By mid-2021, Plaintiff informed Defendant that it would not be renewing its Cyber Policy with Tokio Marine when the Cyber Policy expired on October 1, 2021. (Id. ¶ 18). However, on October 19, 2021, Plaintiff changed its mind and decided to buy a one-year "extended reporting period" so that it would have the ability to report (and have Tokio Marine pay) claims that might arise after the policy expired, i.e., through October 1, 2022. (Id. ¶ 20). Two days later, Defendant confirmed to Plaintiff that Defendant had procured the additional 12-month extended reporting period as Plaintiff had requested, and that coverage under the Cyber Policy extended through October 1, 2022. (Id.).

### c. Tokio Marine Denies Coverage for Plaintiff's Cyber Claim

Under Plaintiff's Cyber Policy, three events gave rise to an insurance claim: (i) when a written demand was made against Plaintiff for damages or non-monetary relief; (ii) when Plaintiff received a written request to toll or waive a statute of limitation relating to legal

proceedings against Plaintiff; or (iii) when Plaintiff was served with a civil lawsuit or the institution of arbitration or other alternative dispute resolution proceedings against Plaintiff seeking damages, a temporary restraining order, or a preliminary or permanent injunction. (Doc. No. 10-2 at 16).

On September 1, 2022, two patients filed a putative class action against Plaintiff for alleged online privacy violations, contending that Plaintiff unlawfully disclosed the patients' protected information. Plaintiff was served with the civil lawsuit on September 9, 2022 ("Underlying Claim"). After this first class action complaint was served on September 9, 2022, two other putative class actions were filed against Plaintiff. (Doc. No. 1 ¶ 6 n.1). The class actions were consolidated into a single putative class action before the North Carolina Business Court in Wake County. See Weddle v. WakeMed Health & Hosps., No. 22 CVS 13860, 2023 WL 2621260 (N.C. Super. Mar. 22, 2023).

Plaintiff reported the Underlying Claim to its insurance company, Tokio Marine, on October 21, 2022. Tokio Marine denied coverage on the ground that the Underlying Claim was not reported to Tokio Marine by October 1, 2022, the date Tokio Marine contends the Cyber Policy's additional 12-month extended reporting period expired. (Doc. No. 1 at ¶ 28). Plaintiff insists that Tokio Marine is wrong and is currently disputing Tokio Marine's coverage decision through arbitration (as required by the Cyber Policy). (Doc. No. 10-2 at 39).

### d. Plaintiff Alleges Defendant is Responsible for Tokio Marine's Denial of Coverage

Although its class action litigation and coverage dispute with Tokio Marine remain unresolved, Plaintiff filed this lawsuit against Defendant. Plaintiff's complaint alleges three causes of action against Defendant.

3

First, Plaintiff alleges breach of contract, stating that Defendant breached the contract provisions requiring it to perform "coverage advising" and "claim reporting" services, resulting in Tokio Marine's denial of coverage for the Underlying Claim. (Doc. No. 1 ¶¶ 29–33). Second, Plaintiff alleges common law negligence, arguing that Defendant failed to perform its coverage advising and reporting services with reasonable care. (Id. ¶¶ 34–38). Third, Plaintiff seeks a declaratory judgment of "the parties' respective rights and obligations" under the Contract, including a declaration that Defendant has an "obligation to defend and indemnify" Plaintiff against the Underlying claim. (Id. ¶¶ 39–44).

In sum, Plaintiff alleges that Defendant failed to provide coverage advising and claim reporting services, and this failure directly and proximately caused Tokio Marine to deny coverage for the Underlying Claim under the Cyber Policy.

## II.     STANDARD OF REVIEW

Defendant moves to dismiss under Rules 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion addresses whether the plaintiff "has a right to be in the district at all and whether the court has the power to hear and dispose of [plaintiff's] claim," and a Rule 12(b)(6) motion addresses whether the plaintiff "has stated a cognizable claim" and challenges the "sufficiency of the complaint." Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012).

Reviewing a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) for lack of standing, "a court must construe the complaint in the plaintiff's favor, accepting as true the factual allegations in the complaint." Students for Fair Admissions, Inc. v. U. of N. Carolina, 1:14CV954, 2018 WL 4688388, at *2 (M.D.N.C. Sept. 29, 2018). A district court should only grant a Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg, &

Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

In reviewing a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept as true all the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

### III. DISCUSSION

Defendant provides two arguments for dismissal. First, Defendant contends that this case should be dismissed under Rule 12(b)(1) because the case is not ripe. Second, Defendant argues that–even if the case were ripe–the case should be dismissed under Rule 12(b)(6) because the undisputed facts warrant dismissal of Plaintiff's claims against Defendant. For the following reasons, this Court holds that this case is not ripe, and therefore refrains from addressing the parties' 12(b)(6) arguments.

#### a. Plaintiff's Case is Not Ripe

Article III of the Constitution vests the "judicial Power of the United States" in the "supreme Court, and [the] inferior Courts." U.S. Const. art. III, § 1. It further provides that the

"judicial Power shall extend" only to certain "Cases" and "Controversies." Id. § 2. One limitation on the judicial power is the prohibition of advisory opinions, which requires that courts must adjudicate only concrete legal issues, presented in actual cases, not abstractions. Menders v. Loudoun Cnty. Sch. Bd., 65 F.4th 157, 162 (4th Cir. 2023).

Ripeness concerns when one party may sue another, so as to ensure that judicial power is used to adjudicate concrete legal issues. South Carolina v. United States, 912 F.3d 720, 730 (4th Cir. 2019). In essence, the doctrine of ripeness prevents judicial proceedings from starting before they are ready. Steves & Sons, Inc. v. JELD-WEN, Inc., 988 F.3d 690, 724 (4th Cir. 2021) (citing Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC, 713 F.3d 187, 198 (4th Cir. 2013)). "The doctrine of ripeness arises from the case or controversy requirement of Article III." Whitaker v. Monroe Staffing Servs., LLC, 42 F.4th 200, 206 (4th Cir. 2022). For that reason, it "presents the threshold question whether a claim is justiciable." Id.

"A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'" Doe v. Va. Dep't of State Police, 713 F.3d 745, 758 (4th Cir. 2013) (quoting Gasner v. Bd. Of Supervisors, 103 F.3d 351, 361 (4th Cir. 1996)). "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." Id. (quoting Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006)); see South Carolina, 912 F.3d at 730 ("[A] plaintiff's claim is not ripe for judicial review 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting Scoggins v. Lee's Crossing Homeowners Ass'n, 718 F.3d 262, 270 (4th Cir. 2013)). Additionally, a court may dismiss a case as unripe for prudential reasons, even if the case is constitutionally ripe. "Prudentially, the ripeness doctrine

exists to prevent the courts from wasting our resources by prematurely entangling ourselves in abstract disagreements ...." Nat'l Treasury Emps. Union v. United States, 101 F.3d 1423, 1431 (D.C. Cir. 1996).

Here, two contingent future events make Plaintiff's lawsuit unripe. First, the Underlying Claim against Plaintiff (i.e., the class action before North Carolina Business Court) remains to be adjudicated. Second, the coverage dispute between Plaintiff and Tokio Marine remains to be arbitrated. There has been no determination that Plaintiff is liable in the Underlying Claim and, even if Plaintiff were held liable, there has been no determination that Plaintiff's liability is not covered by Tokio Marine's Cyber Policy.

This case closely mirrors a case that was decided in the U.S. District Court in South Carolina. Travelers Prop. Cas. Co. of Am. v. M.B. Kahn Constr. Co., Inc., No. 3:20-CV-01304-SAL, 2021 WL 1177861 (D.S.C. Mar. 29, 2021). In Travelers, a contractor was sued for defective construction work, and the contractor's insurance provider declined coverage. The contractor then sued its insurance broker for failing to procure proper insurance coverage. In Travelers, just as in this case, "[a] factfinder ha[d] not determined whether wrongdoing occurred" on Plaintiff's part, and "there ha[d] not been a determination that the" insurance policy did not provide coverage. Travelers Prop. Cas. Co. of Am. v. M.B. Kahn Constr. Co., Inc., No. 3:20-CV-01304-SAL, 2021 WL 1177861, at *33 (D.S.C. Mar. 29, 2021). In light of these contingencies, the Travelers court determined the insurance broker's duty to indemnify the plaintiff was not ripe. Id.

Similar contingencies exist here that render this case unripe. First, an outcome in the class action could moot this case. The class action alleges that Plaintiff intentionally violated patients' privacy, and it is undisputed that the Cyber Policy did not provide coverage for intentional

privacy violations. If it is determined that Plaintiff intentionally violated the privacy of patients, then the Cyber Policy would not cover Plaintiff regardless of whether Plaintiff timely filed their insurance claim or whether Defendant was responsible for a late filing of the claim. Accordingly, Plaintiff would have no claim against Defendant and this case would be moot.

Second, an outcome in Plaintiff's arbitration with Tokio Marine could moot this case. If the arbitration determines that Tokio Marine must provide coverage for the Underlying Claim, and Tokio Marine must reimburse Plaintiff for its defense costs, then Plaintiff will have no claim against Defendant, because Plaintiff's alleged injury will be nonexistent. Also, if the arbitration determines that Tokio Marine is not required to provide coverage for the Underlying Claim for any reason besides untimely claim reporting, then the Cyber Policy would not cover Plaintiff regardless of Defendant's alleged failure to provide coverage advising and claim reporting services, and Plaintiff will have no claim against Defendant.

Prudential reasons further support finding this case unripe. Courts have "invoked the ripeness doctrine to justify dismissal in circumstances where adjudication would not necessarily have exceeded the courts' constitutional power but the prospect of injury was nonetheless sufficiently remote or conjectural that the court considers it prudent not to exercise jurisdiction until the dispute has further ripened to produce a more palpable injury." Bronx Household of Faith v. Bd. of Educ. of City of New York, 492 F.3d 89, 113 (2d Cir. 2007). In assessing the prudential ripeness of a case, a court focuses "on two aspects: the fitness of the issues for judicial decision and the extent to which withholding a decision will cause hardship to the parties." Am. Petroleum Inst. v. E.P.A., 683 F.3d 382, 387 (D.C. Cir. 2012) (internal quotation removed). The outcome of the Underlying Claim and the Tokio Marine arbitration will dictate whether Plaintiff's suit against Defendant is appropriate or practical. Postponing this case, which may

8

well become moot or negligible, until the Underlying Claim and arbitration are resolved, and a more palpable injury is produced, will conserve judicial resources (and the litigants' resources too). Moreover, Plaintiff has not identified any hardship that it will suffer by postponing this case until its underlying disputes are resolved. Therefore, both prongs of the prudential ripeness analysis support dismissing this case as unripe.

Plaintiff argues that despite the uncertainties presented by the Underlying Claim and arbitration, its claims against Defendant are not abstract or hypothetical. First, Plaintiff argues that it has already suffered damages as a direct result of Defendant's conduct, because Plaintiff has already incurred defense costs while as it has defended itself against the Underlying Claim. However, these defense costs are abstract. Damages resulting from Defendant's alleged wrongdoing may or may not exist depending upon the outcome of Plaintiff's arbitration. If the Cyber Policy is determined to cover the Underlying Claim, then Tokio Marine will be required to reimburse Plaintiff for its Underlying Claim defense costs, and Defendant's conduct will have not resulted in damages. (Doc. No. 1 at ¶ 9). Therefore, Plaintiff cannot rely on its defense costs as a basis for this case's ripeness.

Second, Plaintiff contends that the harm it has suffered is not contingent upon an arbitral finding of no-coverage. Plaintiff attempts to draw a distinction between "negligent procurement" decisions like Travelers and this one. In Travelers, the plaintiff sued its insurance broker for selecting a policy that may not have provided expected coverage, and here Plaintiff alleges that its insurance broker failed to correctly advise it regarding its insurance rights, regardless of the actual scope of the policy's coverage. In a negligent procurement case, it is impossible to determine whether a broker was negligent "unless and until there was a no-coverage ruling in another proceeding." (Doc. No. 14 at 10). But, according to Plaintiff, here Defendant failed to

9

correctly advise WakeMed regarding its insurance coverage, regardless of whether the Cyber Policy ends up providing coverage for the Underlying Claim or not.

However, the distinction noted by Plaintiff does not make this case ripe. While the Court may be able to determine Defendant's alleged negligent provision of services without a coverage determination, the existence of an accompanying injury as a result of that alleged negligence remains uncertain. Cf. SOME, Inc. v. Hanover Ins. Co., No. CV 21-493 (BAH), 2021 WL 2935893, at *4 (D.D.C. July 13, 2021) ("There are no contingencies or hypotheticals here. Instead, plaintiff has, as MDP concedes, sufficiently pleaded that plaintiff suffered injury and loss, entitling it to damages in excess of $30 million, proximately caused by MDP's alleged negligence."). Because the very existence of an injury is uncertain at this time, the case must be dismissed as unripe.

## IV. CONCLUSION

In sum, the outcomes of the Underlying Claim and Plaintiff's arbitration with Tokio Marine are contingencies that render this case unripe for adjudication. The fact that Plaintiff has already expended defense costs and alleges acts of negligence irrespective of a determination of insurance coverage by Tokio Marine, does not make this case ripe. Accordingly, this case must be dismissed.

### ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (Doc. No. 9), is **GRANTED** as unripe and this case is dismissed without prejudice.

Signed: August 9, 2023

Max O. Cogburn Jr.
United States District Judge